*286 OPINION OF THE COURT
Jasen, J.
On this appeal we are asked to consider whether the trial court erred in refusing to allow a defense witness to testify, for purposes of impeachment, that a key prosecution witness had a bad reputation in the community for truth and veracity. Also presented for our consideration is the sufficiency of the evidence to support the convictions for assault in the first and second degrees.
In the early morning hours of December 14,1979, a fight broke out in “Pop’s Bar” in Queens. According to the prosecutor, defendant Frank Pavao, accompanied by Joseph Pavao and Pasquale Tridico, approached James Irwin and John Staganelli, who were sitting at the bar, and, for no apparent reason, struck both men in the face with a pistol.[1] The ensuing fight spilled out onto the sidewalk in front of the tavern where Patricia Pittman and Thomas Walters happened to be passing by. As Irwin and Staganelli walked away, defendant began cursing and hurling racial slurs at Pittman and Walters, both of whom are black. A fight ensued, during the course of which Walters was beaten and knocked to the ground by defendant and his two companions. Defendant then produced a pistol and shot Walters. The three men fled while Pittman called for help.
The police arrived shortly thereafter and Pittman furnished them with a description of the man who shot Walters, to wit: a young white male, 5 feet 3 inches to 5 feet 5 inches tall, weighing 150 pounds, with short curly hair, a beard and moustache and wearing a beige turtleneck sweater and black hat. She then accompanied the police officers as they patrolled the neighborhood in search of the suspects. At 97th Street and Sutphin Boulevard, about two blocks from the scene of the shooting, Pittman saw three men being detained by two other police officers and immediately identified the men as Walters’ assailants. She specifically pointed out defendant as the man who had shot Walters.
*287 Defendant was arrested and charged with attempted murder in the second degree and assault in the first degree with respect to the attack on Walters and two counts of assault in the second degree with respect to the attacks on Irwin and Staganelli. After a jury trial, defendant was found not guilty of attempted murder, but was convicted of the remaining charges. Defendant appealed and the Appellate Division affirmed, without opinion.
Defendant, on this appeal, contends that there was insufficient evidence to sustain his convictions. He also contends that various trial errors require that his convictions be reversed and a new trial ordered.
Initially, we hold that the evidence adduced at trial was insufficient as a matter of law to sustain defendant’s conviction on the two counts of second degree assault. With respect to these charges, both of the complainants, Irwin and Staganelli, testified that the defendant was not the person who assaulted them. Additionally, the barmaid on duty the night of the attack, Elizabeth Lerch, testified that she knew defendant and that he was not in the bar that night. In view of this evidence, Patricia Pittman’s testimony that she saw the defendant push Irwin and Staganelli out of the bar immediately before the fight with Walters broke out does not constitute proof beyond a reasonable doubt that defendant pistol-whipped Irwin and Staganelli inside the bar. Pittman’s eyewitness account of the shooting and her positive identification of defendant as the man who shot Walters did, however, provide the jury with sufficient evidence to convict defendant of the first degree assault charge.
Defendant also contends that various trial errors deprived him of his right to a fair trial and that his conviction of first degree assault should be reversed accordingly and a new trial ordered. We agree.
Defendant’s principal argument for reversal focuses on the trial court’s refusal to allow defendant to call a witness to testify that one of the prosecution’s witnesses had a bad reputation in the community for truth and veracity.
At the trial, the prosecutor called as a witness, Serafim Pelarigo, an employee of a Portuguese social club located *288 at 95-41 Sutphin Boulevard, one block from the scene of the shooting. Pelarigo testified that defendant entered the club at approximately 1:00 a.m. on December 14,1979 and said that he had just shot a black man in a bar. Pelarigo further testified that he told the defendant to leave and that when they met again on August 20,1980, Pavao asked him why he had not helped him the night of the incident. On cross-examination, Pelarigo admitted that although he had told his wife about the shooting, he failed to notify the police or anyone else of defendant’s admission. Pelarigo also admitted that he had had a fight with defendant subsequent to December 14.
Defense counsel then called James Velasquez as a witness for the purpose of impeaching Pelarigo’s credibility. Velasquez testified that he knew Pelarigo personally. Further questioning, however, was interrupted by the prosecutor’s repeated objections. A side bar conference was held, at which defense counsel made an offer of proof stating that “I am putting — I am putting him on the stand for the sole purpose and I am leading into it as to the reputation of Serafim Pelarigo in the community and in him being able to tell the truth.”[2] The court ruled that this was a collateral issue which could not be inquired into because Velasquez had nothing to do with the shooting. Thereupon, Velasquez was dismissed and the jury was instructed to disregard all of the questions asked of the witness and the answers given by him.
The general rule of evidence in this State concerning the impeachment of witnesses with respect to collateral matters is that “the cross-examiner is bound by the answers of the witness to questions concerning collateral matters inquired into solely to affect credibility.” (Richardson, Evidence [Prince, 10th ed], § 491, p 477.) It is well established that the party who is cross-examining a witness cannot introduce extrinsic documentary evidence or call other witnesses to contradict a witness’ answers concerning collateral matters solely for the purpose of impeaching that *289 witness’ credibility. (People v Zabrocky, 26 NY2d 530, 535; People v Schwartzman, 24 NY2d 241, 245, cert den 396 US 846; People v Duncan, 13 NY2d 37, 41; People v Sorge, 301 NY 198, 201.) This rule is premised on sound policy considerations for if extrinsic evidence which is otherwise inadmissible is allowed to be introduced to contradict each and every answer given by a witness solely for the purpose of impeaching that witness, numerous collateral minitrials would arise involving the accuracy of each of the witness’ answers. The resulting length of the trial would by far outweigh the limited probative value of such evidence. (See People v Schwartzman, 24 NY2d 241, 245, cert den 396 US 846, supra.)
Where, however, the cross-examiner does not seek to contradict specific answers given by a witness, but, rather, attempts only to show that the witness has a bad reputation in the community for truth and veracity, the rule is different. The rule in such cases is that other qualified witnesses may be called to testify with respect to the witness’ reputation for untruthfulness. (People v Hinksman, 192 NY 421, 432; Richardson, Evidence [Prince, 10th ed], § 494, p 479; Fisch, New York Evidence, § 452, p 259; 65 NY Jur, Witnesses, § 75, p 238.)
In People v Hinksman (supra), we limited the use of extrinsic impeaching testimony to attack on the witness’ reputation for truth and veracity; in so doing, we held that evidence of the witness’ general reputation is inadmissible for purposes of impeaching his credibility. (People v Hinksman, supra, at pp 433, 435.) The rule set forth in Hinksman is not in conflict with the policy considerations which preclude parties from introducing for purpose of impeachment extrinsic evidence to contradict a witness’ answers.
When the use of extrinsic impeaching testimony is limited to a general statement that the witness’ reputation in the community for truth and veracity is bad, there is no fear that trials will become unnecessarily protracted affairs involving numerous minitrials over whether or not a witness’ answer was accurate or whether a witness did a particular act. Nor will the introduction of this evidence divert the jury’s attention from the main issues involved in *290 the trial. Thus, we see no reason why such evidence which is probative of a witness’ credibility (McCormick, Evidence [2d ed], § 41, p 81), should not be admissible. To hold otherwise would be to deny the jury an effective means of testing and assessing the credibility of witnesses and reaching a proper verdict. We hold, therefore, that a party has a right to call a witness to testify that a key opposing witness, who gave substantive evidence and was not called for purposes of impeachment, has a bad reputation in the community for truth and veracity. Whether the opposing party may call witnesses to rebut the impeaching witness’ statement is a question best left to the discretion of the Trial Judge for it is he who can best assess whether doing so may result in confusion or cause the trial to be unduly extended in length.
Turning then to the facts of the case on appeal, we note the highly damaging nature of witness Pelarigo’s testimony that the defendant came into the club on the night in question and told him “he had just shot a black man in a bar”. The opportunity to impeach the credibility of this witness was, therefore, crucial to the defendant, especially in light of the contradictory testimony as to whether defendant was at Pop’s Bar on the night in question. Consequently, the trial court’s refusal to allow James Velasquez, who presumably knew Pelarigo and his reputation in the community, to testify as to his reputation for honesty and truth, was error requiring a new trial, since we believe that there was a significant probability that the jury would have acquitted defendant were it not for this error. (People v Crimmins, 36 NY2d 230, 242.)
The prosecutor all but concedes that the trial court erred in disallowing this testimony, but seeks to justify the ruling by arguing that the rule should no longer be followed because “its vegetating and non-utilitarian status over the past five decades or so indicate^] a tacit recognition that this type of evidence is generally ineffective and insignificant from the standpoint of influencing the trier of facts.” We find this argument unpersuasive.
Initially, we note that the weight to be given evidence presented at trial is a matter for the jury. The known reputation of a key witness for honesty and truth should be *291 considered in testing his credibility. The court’s action, however, in denying the defendant an opportunity to challenge the veracity of a key prosecution witness who had testified to a purported damaging admission, deprived the jury of evidence which would assist them in evaluating the credibility of this important witness. Furthermore, an examination of existing law indicates that the majority of jurisdictions follow this or a less restrictive rule in allowing a key witness to be impeached. (McCormick, Evidence [2d ed], § 44, p 90; 98 CJS, Witnesses, § 512, p 417.) Additional evidence of the continuing value of this type of impeachment evidence is found in rule 608 (subd [a], par [1]) of both the Federal Rules of Evidence and the Proposed Code of Evidence for the State of New York, which provide, inter alia, that the credibility of a witness may be attacked by extrinsic testimony that the witness’ reputation in the community for truth and veracity is bad.
We reaffirm today the rule first established in People v Hinksman (supra) which permits the introduction of relevant evidence which is probative of a witness’ credibility (McCormick, Evidence [2d ed], § 41, p 81) but does not carry with it the danger that numerous collateral issues will have to be resolved, causing the trial to become unnecessarily protracted and clouding the main issues. In light of this, defendant’s conviction for assault in the first degree should be reversed and a new trial ordered.
While it is unnecessary to determine whether defendant’s remaining allegations of error constitute an independent basis for reversal, we briefly address them for purposes of providing guidance to the trial court at defendant’s new trial.
At a Sandoval hearing prior to trial, the court ruled that three of defendant’s prior convictions could not be offered in evidence against him in the event he chose to testify. The court also ruled, however, that defendant could be questioned with respect to his indictment on charges of attempted murder, assault in the second degree and criminal possession of a weapon in the fourth degree, all of which were allegedly committed after the incident at issue *292 here.[3] While evidence of other crimes cannot be proffered solely for the purpose of showing that a defendant is of such a criminal bent that he is likely to have committed the crime charged (People v Sandoval, 34 NY2d 371, 375; People v Schwartzman, 24 NY2d 241, 247, cert den 396 US 846, supra), it is within the discretion of the Trial Judge to decide whether the probative worth of evidence of other crimes on the issue of defendant’s credibility outweighs the risk of unfair prejudice to him (People v Williams, 56 NY2d 236; People v Pollock, 50 NY2d 547). Furthermore, questioning concerning other crimes is not automatically precluded simply because the crimes to be inquired about are similar to the crimes charged. (People v Rahman, 46 NY2d 882; People v Sorge, 301 NY 198, 200, supra; cf. People v Williams, supra, at p 239.)
Inasmuch as the Trial Judge precluded the prosecutor from questioning defendant about three prior convictions and specifically stated that the pending charges could be inquired into “as far as credibility is concerned and only for the purpose of credibility”, it cannot be said that the court abused its discretion in ruling as it did. (People v Pollock, supra.)
With respect to the actions of the prosecutor during the course of the trial, two errors were committed. The question put to Officer O’Connor by the prosecutor as to whether defendant refused to make a statement after being read his rights was clearly improper and violative of defendant’s right to remain silent. (People v Von Werne, 41 NY2d 584; cf. People v Al-Kanani, 26 NY2d 473.) While the trial court properly sustained defense counsel’s objections prior to the question being answered, it denied defendant’s request for curative instructions. Such curative instructions should have been given.
*293 The more egregious error committed by the trial court was in permitting the prosecutor, over objection, to assert in his summation that James Irwin and John Staganelli testified that defendant pistol-whipped them when, in fact, Irwin and Staganelli testified that defendant was not one of the persons who attacked them. Defendant’s remaining allegations of improper prosecution tactics are either unpreserved or without merit.
Finally, defendant assigns as error the fact that the person assigned to interpret the testimony of witness Pelarigo was not qualified to perform the task. The record reveals that the interpreter conceded that Pelarigo’s accent was different than that used in Brazil where she learned to speak Portuguese. Moreover, in response to the question whether she had any special training with regard to the Portuguese language as spoken in Portugal, the interpreter replied: “Well, we understand it, it’s the same language, but sometimes like I said before, it may be a little difficult for the person to understand. This gentleman, he speaks a very difficult Portuguese and I almost can’t understand what he is talking about. That is why I ask him to repeat what he is telling me.” Then, when asked if she could interpret Pelarigo’s testimony without deviation, she repeated: “It depends if I understand very well what he is saying.” Under these circumstances, it was error, as a matter of law, for the court to deny defendant’s motion to disqualify the interpreter and appoint a new one.
Accordingly, the order of the Appellate Division, affirming a judgment of the Supreme Court, Queens County, convicting the defendant of one count of assault in the first degree, should be reversed and a new trial ordered in respect thereto, and as to the conviction of the defendant of the two counts of assault in the second degree, those counts of the indictment should be dismissed.
Chief Judge Cooke and Judges Jones, Wachtler, Meyer and Simons concur.
Order reversed, the counts of the indictment charging assault in the second degree dismissed and case remitted to Supreme Court, Queens County, for a new trial in accordance with the opinion herein.

. On January 29, 1981, Joseph Pavao and Pasquale Tridico were acquitted of all charges following a nonjury trial.

. While inartfully worded, we believe this statement was sufficient to alert the Trial Judge to the fact that Velasquez was going to testify concerning Pelarigo’s reputation for truthfulness and not simply to show that Pelarigo’s general reputation was bad.

. The fact that the crimes sought to be used to impeach defendant’s credibility were allegedly committed after the shooting involved in the present case occurred is irrelevant. A defendant who acts in a manner demonstrating that he is willing to place his own self interests ahead of the interests of society, whether he has done so before or after the crime he is facing trial on was committed, may be willing to do so again on the witness stand. We also note, however, that defendant made no objection to the court’s ruling on the ground of self incrimination. That issue is, therefore, not preserved for our review. (People v Martin, 50 NY2d 1029; People v Tutt, 38 NY2d 1011.)