■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID JACKSON, Appellant. [608 NYS2d 540] —Cardona, P. J. Appeal from a judgment of the County Court of Chemung County (Danaher, Jr., J.), rendered November 23, 1992, upon a verdict convicting defendant of the crime of promoting prison contraband in the first degree.

On May 28, 1991, Correction Officer Robert Tuttle, a yard officer working A block at Southport Correctional Facility in Chemung County, was taken hostage by rioting inmates. During a pretrial *Wade* hearing, Tuttle testified that although he was blindfolded and shackled, he identified defendant by his voice as the inmate in the yard area on his right side who held a "shank" to his throat. He further stated that for 15 minutes defendant made him repeat things about the Department of Correctional Services being prejudiced and that black people were not getting a fair shake. He testified that about four or five hours later he had a second encounter with defendant while he was still blindfolded on the roof of A block. Tuttle related a conversation that he had with another inmate whom he recognized by the last name of Vasquez. "Inmate Vasquez said that, remember the guy who spit in your face, he said, what would you say to him now, and I said, I am sorry. Well, he goes, you can say it, because he is right behind you." Tuttle again recognized defendant by his voice when he spoke. Tuttle never saw defendant at any time during the riot. Tuttle indicated that he knew defendant prior to May 28, 1991 because he had taken him to showers on some seven occasions during the 20 days that defendant had been at the facility prior to the riot and that he had problems with him. On one occasion defendant spit in his face. On another occasion defendant threw feces at him. Tuttle had conversations with defendant on both of those occasions.

On June 11, 1991 and again on March 13, 1992, Tuttle was shown the same photo array of 52 photographs of inmates known to have been in the A block yard during the riot. On each occasion he was asked if he could identify anyone that was involved in the riot and describe the individual's particular activity. On both dates he picked out defendant's photograph and stated that he was the inmate who had held a shank against his neck. During the first identification procedure each photograph contained the name and inmate identification number on the front and on the back, a number from 1

through 52. During the second identification the names on the photographs were blackened out so that they could not be read.

County Court found that neither identification procedure was suggestive or conducive to misidentification by Tuttle and, in any event, there was an independent basis for his photo and voice identification. County Court denied defendant's motion to suppress and Tuttle testified at trial that he recognized defendant by his voice. He did not testify to his prior photographic identifications of defendant. He and defendant were the only two witnesses at the trial.

On appeal defendant's first contention is that the pretrial identifications should have been suppressed because there was a substantial risk of misidentification due to the suggestibility of the photo procedure. Although the photo array has not been included in the record on this appeal, we nevertheless uphold County Court's suppression ruling, albeit on a different basis. Here, because defendant was already known to Tuttle prior to the riot, the photo arrays merely confirmed his identification of defendant (see, People v Fletcher, 178 AD2d 776, 777, lv denied 79 NY2d 1000). Under the circumstances of this case, we find no merit to defendant's claim that the People should have obtained voice exemplars and conducted a voice identification procedure. Nor is there any issue regarding the identification of defendant by Vasquez during the riot for County Court excluded evidence of that identification.

Defendant also contends that the evidence was both insufficient and against the weight of the evidence to prove defendant's identity, and insufficient to prove the element of dangerous contraband. Although there were discrepancies, defendant's trial testimony confirmed that Tuttle was one of the few correction officers that he knew at Southport; that he and Tuttle were involved in two confrontations over spitting and the throwing of feces prior to the riot; that he had been in the A block yard during the riot; that he was let out of the recreation pen where Tuttle had first placed him before the riot; that his shackles were removed by another inmate; that he saw Tuttle being held as a hostage; that he saw inmates with sharpened metal weapons; that he kept his face covered during the riot; that he was up on the roof for a time during the riot; and that he knew about the prison rule prohibiting inmates from possessing sharpened items outside their cells. This testimony, together with Tuttle's testimony that he recognized defendant by his voice as the inmate who held a metal object to his throat which he could feel had been

sharpened, could, along with the permissible inferences drawn therefrom, lead a rational person to conclude that defendant possessed dangerous contraband in the form of a sharpened weapon *(see, People v Bleakley,* 69 NY2d 490, 495). The evidence was therefore legally sufficient to support defendant's conviction for promoting prison contraband in the first degree. Furthermore, viewing this record in a light most favorable to the People and mindful of the great deference accorded to the jury's assessment of credibility, we find that the verdict was amply supported by the weight of the evidence and should not be disturbed *(see, supra; People v Torres,* 199 AD2d 821, 822).

Finally, we find no merit to defendant's contention that the prison sentence of 3 to 6 years imposed by County Court to run consecutively to the sentence he is now serving is harsh and excessive under the circumstances; nor does defendant present any extraordinary circumstances warranting a modification *(see, People v Wright,* 176 AD2d 1131, 1132, *lv denied* 79 NY2d 866; *People v Ambrose,* 160 AD2d 1097, 1097-1098, *lv denied* 76 NY2d 784).

Mikoll, Crew III, Casey and Weiss, JJ., concur. Ordered that the judgment is affirmed.