83 N.Y.2d 653 (1994)
634 N.E.2d 961
612 N.Y.S.2d 360
The People of the State of New York, Respondent,
v.
Kenneth Inniss, Appellant.
Court of Appeals of the State of New York.
Argued March 22, 1994.
Decided May 10, 1994.
Steven N. Feinman, White Plains, for appellant.
Richard A. Brown, District Attorney of Queens County, Kew Gardens (Sharon Kiel and Steven J. Chananie of counsel), for respondent.
Chief Judge KAYE and Judges SIMONS, TITONE, BELLACOSA and CIPARICK concur with Judge LEVINE; Judge SMITH dissents and votes to reverse in a separate opinion.
*656 LEVINE, J.
Defendant was convicted of murder in the second degree and criminal possession of a weapon in the second degree arising out of the assassination-like killing of Brian Rich, a reputed major drug dealer, on Sutphin Boulevard, Queens County, on the evening of Sunday, August 3, 1986. The only eyewitness who testified at the trial was Richard Saunders, whose evidence was given pursuant to a cooperation agreement entered into with the District Attorney's office in October 1987. Saunders was a longtime friend of both defendant and the victim. Saunders testified that, while in a local detention facility awaiting trial on unrelated robbery in the first degree and unlawful imprisonment charges, he contacted the authorities regarding his knowledge of the identity of Rich's killer and eventually was promised dismissal of all pending charges in exchange for giving truthful testimony in the prosecution of the murder.
According to Saunders, sometime in mid-July 1986 defendant offered him $10,000 to murder Rich, which he promptly declined, not taking the defendant seriously. Then, on the evening of August 3, he was walking with Rich on Sutphin Boulevard when he observed a grey van slowly approaching them. He separated himself from Rich because he thought the van might be occupied by police intending to arrest Rich. As the van pulled over to the curb, Saunders saw the sliding door open up and recognized defendant halfway out of the vehicle, armed with an Uzi automatic weapon. Saunders ran as the shooting started and he heard two kinds of weapons being fired. Rich died as a result of gunshot wounds. Saunders testified that defendant called him the next day to chide him for being so close to Rich, knowing that a "contract" was out on his life and to warn Saunders against revealing that he was one of the perpetrators. Saunders also testified to an October 5, 1987 telephone conversation with defendant in which they discussed the killing and another telephone conversation after defendant's arrest, in which defendant threatened him if he testified.
The forensic evidence adduced at the trial was that the victim had 28 entrance wounds, and that the vast majority of spent bullets and shells recovered from his body or at the crime scene were fired from the same gun, and were of the same caliber as bullets used in the Uzi machine pistol. Also *657 introduced into evidence was a tape recording of the October 5, 1987 telephone conversation between Saunders and defendant, which was initiated by Saunders from the District Attorney's office pursuant to the cooperation agreement. During that conversation, Saunders turned to the subject of the killing of Rich and asked defendant in substance why he had to use the kind of weapon that would "put so many holes in [Rich]". Defendant replied that "the Uzi was a weapon they used to kill and that was the gun he had to use". A postarrest statement of defendant was also introduced into evidence. The defense consisted of the testimony of two alibi witnesses and of the defendant. Defendant was convicted as charged.
The Appellate Division affirmed defendant's conviction (192 AD2d 553). A Judge of this Court granted defendant leave to appeal, and we now affirm.
Defendant's first point on this appeal is that the trial court committed reversible error in refusing the defense requests to (1) introduce the testimony of the complainant, a Mark Sills, in the dismissed robbery and unlawful imprisonment indictment against Saunders; and (2) introduce into evidence a transcript of the cooperation agreement between Saunders and the District Attorney's office leading to that dismissal.[1]
We disagree. Saunders was subjected to rigorous and intensive cross-examination concerning both his commission of the criminal offenses in the dismissed indictment and concerning the cooperation agreement between him and the prosecutor's office. The defense was furnished with the portions of the sealed file on the dismissed indictment to enable effective cross-examination. Saunders fully admitted the substance of the cooperation agreement and that his cooperation was motivated by the expectation of leniency. However, he denied committing the crimes charged against him in the indictment.
The only ground defendant put forth to the trial court for seeking to introduce the testimony of Sills (Saunders' alleged victim in the dismissed charges) and the transcript of the *658 cooperation agreement was to contradict Saunders' denial of guilt of the dismissed charges, and thereby to impeach Saunders' credibility. Thus, defense counsel in making both requests stated:
"MR. GEDULDIG: My problem is if I want to bring Sills in to show that a gun was put on him.
"THE COURT: You won't get that either. That's a collateral issue.
"MR. GEDULDIG: Perjury. * * *
"MR. GEDULDIG: Let's assume for argument sake that the agreement contains a statement that he committed a crime.

"THE COURT: I don't care if he did or not. It's a collateral issue" (emphasis supplied).
At no time during the trial did defense counsel ground his argument for the admissibility of Sills' testimony and of the cooperation agreement on their probative value to demonstrate Saunders' bias or interest, as defendant now contends on appeal. Consequently, the admissibility of Sills' testimony and the cooperation agreement to show Saunders' bias or interest was not preserved for review by this Court (see, People v Tarsia, 50 N.Y.2d 1, 9-10; People v Cona, 49 N.Y.2d 26, 33, n 2; Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 470.05, at 12).
Because the only basis given at the trial for introducing the foregoing evidence was to establish Saunders' "perjury", i.e., to impeach his credibility, the Trial Judge properly ruled that its admission was barred by the collateral impeachment rule (see, People v Pavao, 59 N.Y.2d 282, 288-289; People v Sorge, 301 N.Y. 198, 201; Richardson, Evidence § 491, at 477 [Prince 10th ed]). Moreover, as the Appellate Division noted, since the terms of the cooperation agreement and Saunders' interest and bias were "exhaustive[ly]" (192 AD2d, at 554) explored on cross-examination, introduction of documentary evidence of the agreement was properly denied as being merely cumulative (see, People v Chin, 67 N.Y.2d 22, 29).[2]
Defendant's remaining argument is that the Trial Judge committed reversible error in its instructions to the jury. Of the errors alluded to, the only one preserved was the refusal *659 of defendant's request to give an interested witness charge regarding Saunders' testimony, i.e., that his testimony "should be scrutinized carefully and a determination made as to whether any benefit he received affected the truthfulness of that testimony" (People v Jackson, 74 N.Y.2d 787, 790; see, 1 CJI[NY] 7.24). However, Saunders' bias and interest were hammered at by the defense in opening, cross-examination and in summation, and not seriously disputed. Under such circumstances, we conclude that the charge as a whole, including the instruction given the jury that it could consider the interest or bias of any witness in assessing the credibility of that person, was sufficient to convey the need to scrutinize Saunders' testimony with care. And the jury indeed intensely scrutinized Saunders' testimony, requiring that it be read back to them twice, along with twice hearing the tape recording of his October 5 conversation with defendant. Therefore, the refusal of this requested charge forms no basis for reversal (People v Warren, 76 N.Y.2d 773, 775; People v Agosto, 73 N.Y.2d 963, 967).
Accordingly, the order of the Appellate Division should be affirmed.
SMITH, J. (dissenting).
I dissent because the trial contained two prejudicial errors. First, the trial court refused to direct the production of Brady material (Brady v Maryland, 373 US 83) and Rosario material (People v Rosario, 9 N.Y.2d 286). Second, the trial court refused to charge the jury that the main witness against defendant was an interested witness. The requests for the material and the charge were timely made.
Defendant was convicted of the murder of Brian Rich on August 3, 1986. The chief witness against defendant, Richard Saunders, testified that in July 1986, defendant approached him and asked if he would kill Rich for $10,000. Saunders did not think defendant was serious and refused. On the night of August 3, 1986, around 11:00 P.M., Saunders testified, he was walking with Rich and a woman, when a van pulled up. Saunders then saw the door open and defendant shoot and kill Rich.
It was not until almost a year after the murder, in June 1987, that Saunders, who was in jail on a robbery charge, contacted a detective and eventually agreed to cooperate with the police concerning the murder of Rich. During the course of that cooperation, Saunders telephoned defendant and engaged *660 him in a conversation about the murder. Saunders asked defendant why he had to kill Rich "that way" and "put so many holes in him." According to Saunders, defendant replied that "the Uzi was a weapon they used to kill and that was the gun he had to use." Saunders also testified that the day after the killing, defendant came to his apartment and asked him why he had been with Rich knowing that a contract was out on his life and that he, Saunders, could have been killed. Defendant also threatened Saunders not to reveal anything incriminating defendant.
Defendant took the stand and denied killing Rich. He stated that his conversation with Saunders about the murder was "macho" conversation and also pursuant to a prearranged plan to help Saunders with his robbery charge. Saunders told him that if someone at the jail listened to his conversation with Saunders, that would be a violation of Saunders' constitutional rights, Saunders would then be freed and would not testify against defendant.
Defendant made a pretrial request that any agreement between the prosecution and Saunders be produced. Prior to Saunders' cross-examination at trial, defendant again asked for the cooperation agreement and, specifically, the minutes of the March 4, 1988 proceeding at which the robbery charges against Saunders were dismissed "for the reasons stated on the record." Defendant claimed that the People had not met their burden in providing Brady or Rosario material. No minutes or cooperation agreement were produced. At the trial Saunders testified that he had agreed to testify in return for the pending robbery charges being dropped.
Both the majority and the dissent are in accord that any cooperation agreement between the prosecution and their witness, Saunders, had to be revealed. In fact, revelation is required by our cases. "The existence of an agreement between the prosecution and a witness, made to induce the testimony of the witness, is evidence which must be disclosed under Brady principles" (People v Cwikla, 46 N.Y.2d 434, 441). Where the majority and dissent differ is in the People's obligation to produce any evidence of that cooperation agreement which was contained in the proceedings that dismissed the robbery charge against Saunders. In my view the People had an obligation not only to reveal the cooperation agreement but also to provide defendant with any written or recorded evidence of that agreement. The assertions here by *661 the People's main witness as to the nature of the agreement were not binding upon defendant.
Moreover, if at the time of the dismissal of the robbery charge against Saunders, he discussed this case at all, that discussion, arguably, constituted Rosario material. In People v Rosario (supra) this Court, noting that there was no substitute for the "single-minded counsel for the accused" (9 NY2d, at 290), rejected a contention that it was sufficient for a trial court to examine prior statements of a witness and turn over to the defendant anything it believed to be relevant.
I cannot agree with the majority that the only basis for defendant's request for production of the minutes of the dismissal proceeding against Saunders was the issue of credibility. In his omnibus motion, defendant had asked for "[a]ny evidence known to the People which may be exculpatory in nature and favorable to the defendant." At trial, defendant asked for production of the minutes because, "The People did not meet their burden with providing me with Brady or Rosario material." Toward the end of his cross-examination of Saunders, defendant again asked for the transcript and, as he spoke, was cut off by the Trial Judge who said he would not get the transcript.
It is also clear that both at the Appellate Division and here, defendant argued that the production and introduction of the cooperation agreement were essential to his contention that the witness, Saunders, had a strong interest and bias in the outcome of the case. Such impeachment evidence, like exculpatory evidence, falls within the Brady rule that such evidence must be provided to defendant (see, United States v Bagley, 473 US 667, 676).
The failure to produce the transcript of the dismissal proceeding creates an issue as to Saunders' assertion at trial that he did not commit the robbery of which he was charged and which led to the cooperation agreement. If Saunders admitted or arguably admitted that he committed the robbery, his credibility is severely compromised. Moreover, the transcript is relevant not only on the issue of credibility but on the issues of interest and bias as well. Defendant had the right to see the transcript in order to use it on cross-examination. In light of the failure to produce the transcript, it is simply speculative to conclude that it was cumulative.
Turning to the second issue, defendant requested a charge that Saunders was an interested witness. The request was *662 refused both prior to and after the court's charge. When a cooperation agreement such as that here has been entered into in return for testimony, it is incumbent upon the trial court, when requested, to give more than the standard charge on interested witnesses (see, People v Jackson, 74 N.Y.2d 787 [specific charge as to the interest of cooperating witness should have been given]).
For the foregoing reasons, the order of the Appellate Division should be reversed, the conviction vacated and a new trial ordered.
Order affirmed.
NOTES
[1] The record indicates that the cooperation agreement was an oral one. However, the dismissed indictment, disclosed to defendant for purposes of cross-examination of Saunders, contained a notation that the prosecutor had moved to dismiss it "for the reasons stated on the record". No transcript of the minutes of the proceedings on the dismissal of Saunders' indictment was found in the sealed file, and it is inferable from the record that the minutes of that proceeding were not transcribed. Defense counsel was, thus, actually requesting the transcription of the "reasons stated on the record", for the purpose of introducing those minutes into evidence.
[2] Contrary to the position of the dissent, any claim made below concerning the prosecution's failure to fulfill its Rosario (9 N.Y.2d 286) or Brady (373 US 83) obligations has not been pursued on appeal before this Court.