■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v

Lee W. Doane, Appellant. [617 NYS2d 232] —Cardona, P. J. Appeal from a judgment of the County Court of Chemung County (Danaher, Jr., J.), rendered July 15, 1991, upon a verdict convicting defendant of the crimes of burglary in the second degree, criminal possession of stolen property in the fifth degree and petit larceny.

In the late evening hours of January 30, 1991, while being questioned at the City of Elmira Police Department regarding an unrelated armed robbery, defendant gave a statement to Investigator Daniel O'Brien of the Chemung County Sheriff's Office admitting his involvement in a burglary earlier that evening at the Meisel residence located in the Town of Horseheads, Chemung County. Investigator Robert Chapman was dispatched to the Meisel residence at approximately 10:30 P.M. and verified the burglary. Thereafter, defendant and a codefendant, who also gave a statement to Sheriff's investigators, were arrested for the burglary. The codefendant pleaded guilty and testified against defendant at trial, as did the victim's granddaughter. In addition to defendant's statement, evidence recovered from the vehicle in which defendant had been riding on the night of the burglary was also introduced. Following his conviction on all three counts of the indictment, defendant was sentenced to a prison term of 4 to 12 years on the burglary in the second degree conviction and one year in County Jail on the petit larceny and criminal possession of stolen property in the fifth degree convictions, all sentences to be served concurrently.

Defendant initially contends that his convictions should be reversed on a *Rosario* violation *(People v Rosario,* 9 NY2d 286, *cert denied* 368 US 866; *see,* CPL 240.45) because a criminal offense report allegedly prepared by Chapman was unavailable at trial. Defendant's attorney had permitted Chapman to testify on direct based upon representations that the report would be produced prior to cross-examination. Chapman's direct testimony was limited to his observations at the burglary scene and the introduction of photographs taken by him at the scene. When the report could not be produced, County Court conducted a hearing prior to defendant's cross-examination of Chapman. In the hearing, Chapman stated that after he photographed the scene he interviewed the victim's granddaughter and verified that she may have given information to defendant that her grandmother's home would be empty because she was out of town. He also talked to the victim by telephone and her daughter concerning property ownership

statements. Chapman stated that he had no contact with defendant and was never present during any conversation with defendant. The prosecutor stated that no such report had ever been in his file and that he did not learn of its possible existence until the morning of the hearing. Finally, Chapman stated that he could not be sure whether he had actually prepared an offense report concerning the burglary.

Although County Court was not convinced that the alleged offense report existed, the court concluded that if it did, it was lost or destroyed without any fault on the part of the People; the court then imposed as a sanction an adverse inference instruction. In fact, the court rendered that instruction immediately following the completion of Chapman's testimony and again during final instructions to the jury. Furthermore, defendant's attorney was permitted to develop the significance of the missing report during his cross-examination of Chapman and in his summation.

Although defendant maintains that he was prejudiced by the missing report because it may have shown that Chapman saw another person running from the burglary scene while he was being questioned at the police station—a claim which Chapman specifically denied—we find that the adverse inference instruction was appropriate, under the circumstances, to rectify whatever harm defendant may have suffered by the failure to produce the report (see, People v Duffy, 206 AD2d 679).

We reject defendant's contention that County Court improvidently exercised its discretion in its Sandoval ruling, which permitted the prosecution to inquire into the underlying facts of defendant's two prior youthful offender adjudications for acts involving petit larceny and attempted robbery. These adjudications weighed heavily on defendant's credibility and his willingness to place his own interests above those of society (see, People v Arroyo, 194 AD2d 406, 407, lv denied 82 NY2d 751). Furthermore, the fact that these prior adjudications involved conduct similar to the instant crimes did not automatically bar their use for impeachment purposes (see, People v Pavao, 59 NY2d 282, 292; People v Arroyo, supra).

We find no merit in defendant's remaining contention that the sentences imposed were harsh and excessive. The sentences were within the parameters of those required for a class C violent felony offense (see, Penal Law § 70.02 [2], [3], [4]) and a class A misdemeanor (see, Penal Law § 70.15 [1]). Although defendant was 17 at the time he committed the instant crimes, he engaged in this criminal activity less than

two months following his release from the Chemung County Jail after serving a one-year sentence. Furthermore, the record does not present any extraordinary circumstances warranting a modification *(see, People v Jackson,* 201 AD2d 840, 842, *lv denied* 83 NY2d 911; *People v Wright,* 176 AD2d 1131, 1132, *lv denied* 79 NY2d 866; *People v Ambrose,* 160 AD2d 1097, 1097-1098, *lv denied* 76 NY2d 784).

Mikoll, Crew III and Yesawich Jr., JJ., concur. Ordered that the judgment is affirmed.