(December 30, 2003)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THOMAS HANLEY, Appellant. [770 NYS2d 62]—

Judgment, Supreme Court, New York County (Edwin Torres, J.), rendered August 11, 1998, convicting defendant, after a jury trial, of robbery in the first degree (three counts) and menacing in the third degree, and sentencing him, as a second felony offender, to concurrent terms of 10 years on each of the robbery convictions and one year on the menacing conviction, modified, on the facts, to the extent of vacating defendant's conviction of robbery in the first degree under the second count of the indictment and dismissing that count, and, on the law, to the extent of reducing defendant's sentence on the menacing conviction to a term of three months, and otherwise affirmed.

Except as indicated, the verdict was not against the weight of the evidence. There is no basis for disturbing the jury's determinations concerning credibility (*see People v Gaimari*, 176 NY 84, 94 [1903]). The credible evidence clearly established

that the first and third incidents were robberies, and there is nothing to support defendant's assertion that he was only borrowing money that he intended to repay.

Regarding the first and third incidents, the jury convicted defendant of first-degree robbery, because it found that on October 29, 1997 and January 20, 1998 he entered a bar where he was known and demanded money from the bartenders. When the money was not immediately forthcoming on the first occasion, defendant said, "I don't care what you do . . . we're going to do this one way or the other, I want the money." While saying this, defendant put his hand under his jacket and into his waistband causing bartender McEnroe to glance down thinking he saw something black in defendant's hand. Although he could not identify the object, he thought "maybe it was a gun" based on defendant's "presentation and . . . manner." He gave defendant $100 and defendant left.

Regarding the third incident at the same location, defendant made a similar demand because he was broke and needed money. When bartender Byrnes did not respond by turning over the money demanded, defendant placed his hand in his jacket pocket simulating the pointing of an object, which Byrnes thought was probably a gun. Byrnes did not believe it prudent to wait to find out before deciding to turn over the money from the register.

Defendant left both times after taking the money. This evidence sufficiently supports the People's theory that on each of these two occasions defendant intended to keep the money he took, and, further, that he obtained the money from these bartenders by acting in such a way as to appear to each victim that he had, and would use, a gun (*People v Lopez*, 73 NY2d 214, 220 [1989]; *People v Baskerville*, 60 NY2d 374 [1983]; *People v Williams*, 286 AD2d 918 [2001], *lv denied* 97 NY2d 763 [2002]; *People v Gonzalez*, 265 AD2d 224 [1999], *lv denied* 94 NY2d 863 [1999]; *People v Butts*, 181 AD2d 432 [1992], *lv denied* 79 NY2d 1047 [1992]; *People v McGowan*, 160 AD2d 896 [1990]).

However, the conviction as to the second incident is against the weight of the evidence. In that incident, after defendant ordered a drink and the bartender initially refused to serve him, defendant threatened to "blast" the bartender, who then served defendant, whereupon defendant took the drink, ordered drinks for several other bar patrons, and put a $50 bill on the bar. The People's theory is that defendant forcibly stole his own drink. However, the logical inference to be drawn from this evidence is that defendant threatened to "blast" the bartender because he refused to serve him, not because defendant wanted a free drink. It makes no sense that defendant would order a drink for

himself and for other people and would put $50 on the bar, but only wanted to pay for the other drinks and not his own.

The court properly denied defendant's challenge for cause to a prospective juror, since the panelist's responses, viewed as a whole, clearly established her ability to render an impartial verdict (*see People v Chambers*, 97 NY2d 417, 419 [2002]).

The court properly precluded defendant from calling a purported reputation witness, based upon its determination that defendant failed to lay the proper foundation for reputation testimony (*see People v Bouton*, 50 NY2d 130, 139-140 [1980]). Since defendant based his application entirely on state evidentiary law and never asserted a constitutional right to introduce this evidence, the latter claim is unpreserved (*see People v Angelo*, 88 NY2d 217, 222 [1996]), and we decline to review it in the interest of justice. Were we to review this claim, we would find that the court's ruling had no impact on defendant's right to present a defense (*see Crane v Kentucky*, 476 US 683, 689-690 [1986]), especially in light of the wide latitude that defense counsel was given to attack the credibility of the witnesses to the crimes.

Furthermore, *People v Pavao* (59 NY2d 282 [1983]) does not call for a different result for four reasons: (1) unlike here, the defense attorney in *Pavao* obviously laid an adequate foundation (59 NY2d at 290); (2) unlike here, the prosecutor in *Pavao* "all but concede[d] that the trial court erred in disallowing this [reputation] testimony" (*id.*); (3) again, unlike here, the reputation evidence would have provided a needed opportunity to impeach a crucial witness (*id.*), an opportunity the instant defendant had in abundance in light of the latitude this trial justice gave defense counsel in cross-examining the People's witnesses; and (4) because the *Pavao* fact pattern is markedly different from the facts at bar, even if we were to find the challenged ruling was erroneous, we would conclude that there was no "significant probability that the jury would have acquitted defendant were it not for this [ruling]. (*People v Crimmins*, 36 NY2d 230, 242.)" (*Id.*; *see also People v Kello*, 96 NY2d 740, 744 [2001].)

Defendant's contention that the trial court erred in its jury charge by omitting to state that a conviction for robbery requires the jury to find that defendant intended permanently to deprive the bartenders of the money he demanded is unpreserved and we decline to review it in the interest of justice. Were we to review this claim we would reject it. Defendant never requested such an instruction, he never objected to the charge on those grounds, and defendant never took the position

during trial that he only intended to deprive the victims of their money temporarily. Indeed, defendant's appellate brief expressly stresses the issue of whether defendant displayed what appeared to be a gun as the principal factual issue at trial. Finally, given defendant's theory of the case, the court's charge, viewed in its entirety, adequately instructed the jury.

As the People concede, defendant's sentence on his conviction of menacing in the third degree, a class B misdemeanor, should be reduced to three months, the maximum authorized sentence (*see* Penal Law § 70.15 [2]; § 120.15).

Defendant's remaining contentions are unpreserved and we decline to review them in the interest of justice. Were we to review these claims, we would reject them. Concur—Buckley, P.J., Friedman and Marlow, JJ.

Tom and Rosenberger, JJ., dissent in a memorandum by Tom, J., as follows: Insofar as I conclude that defendant was deprived of a fair trial by the exclusion of relevant and material evidence, I respectfully dissent. Defendant was a neighborhood bar patron familiar to the two complainant bartenders. He was a social acquaintance of one of them. Both of them occasionally loaned him small amounts of money that was later repaid. Both admitted that they often consumed alcohol while working. Defendant was convicted of robbing them on three occasions in October and November of 1997 and January of 1998. On the first occasion, defendant, at about 2:30 A.M., requested money, but the bartender indicated that it had been a slow night, that he had no earnings himself, and that the bar's cash had already been placed in a safe. The bartender testified that defendant again demanded money, and placed his hand under his windbreaker and into his waistband as he did so. The bartender testified that he thought he saw something black in defendant's hand. He testified that he responded "Tommy, Tommy, come on . . . you know me, I know you, I know your family. Come on. This is bullshit." Nevertheless, he gave defendant $100. A female patron was later told by the bartender that defendant had robbed him. That patron, over the bartender's objections, called police, but upon their response, the bartender, hoping to resolve the matter privately, declined to make a statement. The following week, defendant returned to the bar. The same bartender was waiting on customers. He testified that when he declined to serve defendant, defendant lifted his sweatshirt, revealing "what possibly looked like the handle of a gun" and said "give me a screwdriver or I'll blast you." When the bartender served him, defendant placed $50 on the bar and ordered drinks for other patrons. This, logically, was a threat associated with the

bartender not serving defendant, and not a threat intended to extort a drink from the bartender, as was evidenced by the payment. These facts nullified the robbery conviction for this incident and, as the majority also concludes, warrants a reversal of this robbery conviction as being against the weight of the evidence.

Some two months later, when the other complainant was tending bar, defendant ordered a drink but, upon being told that he was not supposed to be drinking in this bar, defendant responded "no problem," and asked for the drink to be poured into a paper cup. Upon being served, defendant sat down, complained that he had no money, and asked for $90. When the bartender indicated that he also had no money, defendant placed his hand in his jacket pocket and simulated pointing something at the bartender. The bartender did not know what defendant was pointing, but gave defendant $45 from the cash register. Police were called. A few days later, defendant called one of the bartenders and complained about the police being called. He showed up at the bar, placed his hand in his waistband, and said "I'll do you right here in front of everybody." The bartender and defendant started shouting at each other and customers ushered defendant out of the bar. The bartender called police, who picked up defendant a few blocks away. Notwithstanding a search of defendant and a canvas of the surrounding neighborhood, a weapon was never recovered. At trial, both bartenders indicated that they had not wanted defendant to be prosecuted, and that they were testifying only under the compulsion of the prosecutor's subpoena.

Robbery in the first degree, under the theory upon which defendant was convicted, requires that a defendant, while forcibly stealing property, displays what appears to be a firearm. Credible factual evidence in support of the allegations regarding whether the complainants observed what appeared to be a firearm was critically important to the convictions. The facts of this case are unusual in some regards, especially as to the familiarity and prior dealings of the parties, the unusual conduct of an identified robber returning to the same bar on multiple occasions, and the reluctance of the bartenders to press charges. The persuasiveness of the evidence that defendant, in fact, displayed what appeared to be a firearm depends ultimately on the complainants' own testimony. Even the prosecutor, in summation, noted that the bartenders had not actually seen a gun. Hence, their credibility and especially the reliability of their recounting of what happened, and the precision with which they recounted each event, were centrally important to the display element.

Defense counsel requested permission to call as a witness another bartender in the same bar, to testify that both complainants had a bad reputation in the community for truthfulness and veracity. Counsel indicated that he had pursued a defense that the complainants had exaggerated what occurred during the incidents and that the proposed witness "knows these bartenders and has told us they're liars." On our present review of the record, the issue to be explored was not identification or even necessarily whether money was handed over, but whether a weapon or a facsimile thereof was displayed and the manner in which threats were actually conveyed. Hence, whether or not the complainants exaggerated this aspect of the events or even fabricated it is relevant and material. It was error to have denied defendant this evidence (*People v Pavao*, 59 NY2d 282, 290-291 [1983]; *People v Rosario*, 298 AD2d 244 [2002]; *cf. People v Bailey*, 275 AD2d 663 [2000], *lv denied* 95 NY2d 960 [2000]), and we cannot exclude the likelihood that the jury would have acquitted defendant of robbery in the first degree but for the preclusion of this evidence (*Bailey* at 664). Although the People contend that no foundation was established for the proposed testimony, counsel, in fact, did try to explore the foundation with the court. Counsel noted that attacking the complainants' credibility had been a defensive strategy from the beginning of the case, but the court peremptorily denied the application before counsel could provide a further narrative of the proposed witness's knowledge of the complainants' reputation. That the proposed witness was a bartender who worked with the complainants, who in the course of his job would naturally converse with neighborhood residents, suggests that a proper foundation would not have been implausible (*see Rosario, supra*).