Kavanagh, J.
Appeal from a judgment of the County Court of Chenango County (Sullivan, J.), rendered February 14, 2005, upon a verdict convicting defendant of the crimes of rape in the third degree (two counts), criminal sexual act in the third degree (three counts) and endangering the welfare of a child (three counts).
Defendant was employed as a senior family life specialist at a private residential facility for children with mental health, emotional and family issues. It is alleged that, in May and June 2004, defendant, at the time 45 years old, engaged in a sexual relationship with a 15-year-old female resident of the facility. After trial, defendant was convicted of rape in the third degree (two counts), criminal sexual act in the third degree (three counts) and endangering the welfare of a child (three counts). He was subsequently sentenced to an aggregate prison term of 4 to 12 years. Defendant now appeals.
Defendant raises numerous challenges to his conviction. Initially, because defendant’s charges were premised upon *821 sexual contact with an underage victim, the victim’s testimony did not require corroboration (see People v Alford, 287 AD2d 884, 886 [2001], lv denied 97 NY2d 750 [2002]; People v Soulia, 263 AD2d 869, 872 [1999], lv denied 94 NY2d 829 [1999]).
We find no error in County Court’s ruling that allowed the People to introduce evidence that defendant was previously married to a woman who was 18 years old, and with whom he had, prior to their marriage, a sexual relationship. This evidence was introduced to support the People’s theory that defendant used his history with his ex-wife as part of his seduction of the victim, by assuring her as to the legitimacy of such conduct and the validity of their relationship (see People v Alvino, 71 NY2d 233, 241-242 [1987]).
We also find that the People’s summation statements, as challenged by defendant, did not deprive defendant of a fair trial. County Court, in response to defendant’s objections regarding these statements, properly instructed the jury as to the purpose of counsel’s final arguments, and that such statements by counsel were not evidence that could be used in arriving at a verdict. As for the claim that the prosecutor improperly characterized testimony and vouched for the credibility of certain witnesses, these statements, when viewed in their proper context, not only represented fair comment on the evidence introduced at trial (see People v Grady, 40 AD 3d 1368, 1374-1375 [2007], lv denied 9 NY3d 923 [2007]; People v Edwards, 38 AD3d 1133, 1133-1134 [2007], lv denied 9 NY3d 864 [2007]) but, in some instances, were specifically delivered in response to arguments made by defense counsel in his summation (see People v Cherry, 46 AD3d 1234, 1237 [2007], lv denied 10 NY3d 839 [2008]; People v Beyer, 21 AD3d 592, 595 [2005], lv denied 6 NY3d 752 [2005]). While references to defendant as a “rapist” and “monster,” and descriptions of the time he spent with the victim as “conjugal visits,” were clearly inappropriate, we cannot conclude, in light of the other evidence presented at trial, that such comments had any impact on the jury’s deliberations or played any role in its final verdict (see People v Hunt, 39 AD3d 961, 964 [2007], lv denied 9 NY3d 845 [2007]).
We do find, however, that County Court erred by not allowing defendant to introduce testimony from an employee of the facility as to the victim’s reputation at the time of trial for truthfulness and veracity within that community. Assuming a proper foundation exists, “ ‘a party has a right to call a witness to testify that a key opposing witness, who gave substantive evidence and was not called for the purposes of impeachment, has a bad reputation in the community for truth and veracity’ ”
*822 (People v Hanley, 5 NY3d 108, 112 [2005], quoting People v Pavao, 59 NY2d 282, 290 [1983]; see People v Carter, 31 AD3d 1167, 1168 [2006]). While defendant was allowed to give his own assessment of the victim’s reputation for truthfulness and veracity, he was not permitted to call a witness for this purpose because, as the court stated, this individual was not employed at the facility when the victim first disclosed the intimate nature of her relationship with defendant and was, therefore, not qualified to give such testimony. This ruling failed to take into account that such testimony would also be admissible to establish the victim’s reputation in the community for truthfulness, and veracity at the time she testified at trial (see People v Garrick, 246 AD2d 478, 478-479 [1998], lv denied 92 NY2d 852 [1998]). Since the victim’s credibility is an issue not only when the allegation was initially made, but also when she was called to testify at trial, it was error not to allow defendant to present such evidence.
While we find this to be error, we cannot conclude, based upon the weight of the other evidence, that this error served to deprive defendant of a fair trial. The victim, who was 15 years old at the time of trial, was a reluctant witness who, by her own admission, still harbored strong feelings for defendant. Despite these feelings, she testified that, in January 2004, her relationship with defendant began when he escorted her and another resident on an authorized trip to a fast food restaurant located off facility grounds. The victim alleged that, there, defendant told her how she reminded him of his ex-wife, who he had met when she was but 16 or 17 years old, and with whom he had an illicit sexual relationship. During this conversation, the victim recalled that defendant touched her on her knee and her buttocks, and asked if she was a virgin. Later defendant began giving her small gifts and, on a daily basis, wrote her “love letters,” which he told her to destroy after she had read them. She further described how defendant gave her a screwdriver, and instructed her how to use it to force open her room window so that she could leave the facility grounds to rendevous with him. The victim described how they drove to defendant’s home, where they engaged in a variety of sexual acts. The victim also testified to meeting with defendant on other occasions within the facility where, again, they had sexual contact.
John Giglio, associate executive director of the facility, testified that early in 2004, he confronted defendant with the fact that he had received numerous complaints from other facility personnel about defendant’s relationship with the victim and that defendant had been seen having inappropriate contact with *823 her. Giglio specifically told defendant that staff members had seen him whispering in the victim’s ear and putting his arm around her, and they had complained that defendant was found alone with the victim in his office and in her room in the female dormitory. When defendant did not deny that such contact had taken place, Giglio advised him to “back off,” and admonished defendant in writing that such conduct was unacceptable and inappropriate. Giglio also testified that when he received additional complaints and found that the inappropriate contact had, in fact, continued, he temporarily suspended defendant from his position at the facility.
Giglio also recounted how facility staff recovered three letters from the victim’s room, which defendant initially denied but later admitted to writing. The content of these letters belie defendant’s testimony at trial that they were not “love letters,” and provide compelling corroboration of the victim’s testimony as to the nature of their relationship. In one, defendant wrote to the victim: “Hello, Princess. How is my love muffin? ... It feels really weird to be this much in love with a 15 year old, but I missed you terribly every minute apart from you. . . I will stand by you for the rest of my time on earth . . . You are my oxygen, my water, everything that sustains life ... I need you. I want you. And I love you.” Another letter read: “I just don’t want to lose you. You are my everything. I can’t wait to see you tonight. I checked the staff and we should have a good night.”
In addition, facility personnel testified to actions taken by defendant that the People alleged were designed to provide him with access to the victim during a time that the victim claims a sexual encounter with defendant took place. Specifically, Deborah Minihan testified that on one occasion, on a weekend after Memorial Day, defendant asked her to switch positions with him so that he could serve as the night monitor of the female dormitory. Minihan testified that defendant had told her that this change in assignments had been approved by supervisory personnel, and that he was authorized to have access to the female dormitory where the victim resided at the time. At trial, it was established that such permission had never been given, that defendant had not been, as he represented, cleared for this position, and that he was not authorized to have such access to this part of the facility.
Defendant not only admitted at trial that he had written letters to the victim and had given her gifts because he was “infatuated with her,” but he also acknowledged that he had, on a previous occasion, taken the victim and another resident to his home in violation of facility regulations. Therefore, in light *824 of the substantial evidence of defendant’s guilt, we cannot say that the proposed testimony regarding the victim’s reputation for truthfulness and veracity “could reasonably have altered the jury’s decision” and conclude, based upon all of the evidence presented, that County Court’s error in refusing to allow such testimony is harmless (People v Hanley, 5 NY3d at 114).
Defendant was not deprived of the meaningful assistance of counsel. While defendant takes issue with his trial counsel’s failure to object to the prosecutor’s leading questioning of the victim, counsel not only made such objections, but placed a standing objection to such questioning on the record. The record establishes that trial counsel made cogent opening and closing statements, engaged in effective cross-examination, voiced appropriate objections (see People v Jackson, 48 AD3d 891, 893 [2008], lv denied 10 NY3d 841 [2008]) and, in whole, provided defendant with meaningful representation (see People v Baldi, 54 NY2d 137, 147 [1981]). Defendant’s pro se claims regarding counsel’s failure to call certain witnesses and access certain records of the victim relate to matters outside the record and, as such, should have been the subject of a CPL article 440 motion (see People v Feliz, 51 AD3d 1278, 1279 [2008]; People v Bonelli, 41 AD3d 972, 973 [2007], lv denied 9 NY3d 921 [2007]).
We have reviewed defendant’s remaining contentions and find them to be without merit.
Peters, J.P., Rose, Lahtinen and Kane, JJ., concur. Ordered that the judgment is affirmed.