[833 NE2d 248, 800 NYS2d 105]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THOMAS HANLEY, Appellant.

Argued June 2, 2005; decided June 29, 2005

## POINTS OF COUNSEL

*Gary T. Kelder,* Manlius, for appellant. I. Appellant was deprived of a fair trial by the trial court's refusal to allow a defense witness to testify that the prosecution's two key witnesses had a bad reputation in the community for truth and veracity. (*People v Bouton,* 50 NY2d 130; *People v Pavao,* 59 NY2d 282; *People v Nieves,* 67 NY2d 125; *People v LaFontaine,* 92 NY2d 470; *People v Rosario,* 298 AD2d 244; *People v Streitferdt,* 169 AD2d 171; *People v Hinksman,* 192 NY 421; *People v Carroll,* 95 NY2d 375; *People v Hudy,* 73 NY2d 40; *Carmell v Texas,* 529 US 513.) II. Appellant was deprived of a fair trial by the trial court's admission of inadmissible, unreliable, bolstering and otherwise highly prejudicial hearsay. (*People v Vasquez,* 88 NY2d 561; *People v Brown,* 80 NY2d 729; *People v Kello,* 96 NY2d 740; *People v Demand,* 268 AD2d 901; *People v Watson,* 299 AD2d 735; *Brown v Keane,* 355 F3d 82; *People v Johnson,* 1 NY3d 302; *People v Marks,* 6 NY2d 67; *People v McDaniel,* 81 NY2d 10; *People v Nieves,* 67 NY2d 125.) III. Appellant was denied his statutory and constitutional rights to a fair trial by an impartial jury by the trial court's denial of a challenge for cause of a prospective juror who gave less-than-unequivocal assurances of her ability to be impartial. (*People v Chambers,* 97 NY2d 417; *People v Johnson,* 94 NY2d 600; *People v Culhane,* 33 NY2d 90; *People v Blyden,* 55 NY2d 73; *People v Greene,* 290

AD2d 349; *People v Thorn,* 269 AD2d 756; *People v Burdo,* 256 AD2d 737; *People v Brzezicki,* 249 AD2d 917; *People v Webster,* 177 AD2d 1026; *People v Smith,* 8 AD3d 965.)

*Robert M. Morgenthau, District Attorney,* New York City (*Sandra E. Cavazos* and *Gina Mignola* of counsel), for respondent. I. The trial court correctly denied defendant's request to present a purported reputation witness, since defendant failed to establish an adequate foundation for such testimony. In any event, any error was harmless. (*People v Hinksman,* 192 NY 421; *People v Pavao,* 59 NY2d 282; *People v Bouton,* 50 NY2d 130; *People v Van Gaasbeck,* 189 NY 408; *People v Lopez,* 266 AD2d 239; *People v Starostin,* 265 AD2d 267; *People v Barber,* 74 NY2d 653; *People v Colantone,* 243 NY 134; *People v Carlo,* 46 AD2d 764; *People v Loris,* 131 App Div 127.) II. Defendant's evidentiary claims are largely unpreserved and entirely meritless. (*People v Boyd,* 58 NY2d 1016; *People v Lewis,* 69 NY2d 321; *People v Brensic,* 70 NY2d 9; *People v Davis,* 58 NY2d 1102; *People v Buie,* 86 NY2d 501; *People v Seit,* 86 NY2d 92; *People v McDaniel,* 81 NY2d 10; *People v Craig,* 293 AD2d 351; *People v Massie,* 2 NY3d 179; *People v Rojas,* 97 NY2d 32.) III. The court correctly denied defendant's challenge for cause lodged against a prospective juror. (*People v Chambers,* 97 NY2d 417; *People v Arnold,* 96 NY2d 358; *People v Williams,* 63 NY2d 882; *People v Feliciano,* 285 AD2d 371; *People v Lucas,* 297 AD2d 568; *People v Turner,* 6 AD3d 1190.)

**OPINION OF THE COURT**

CIPARICK, J.

The issue here is whether defendant had a right to present testimony that a key prosecution witness had a bad reputation in the community for truth and veracity. We conclude that the trial court's failure to allow such evidence was reversible error.

Defendant was no stranger to Wilson's Bar in Manhattan. He lived in the neighborhood and was a frequent patron. He knew the bartenders and had on numerous occasions borrowed money from them which he usually repaid. However, when he walked into the bar on October 29, 1997, according to the People, he did not show up merely for a drink but instead commenced a series of three armed robberies. On that day James McEnroe was the bartender on duty. He testified that defendant came in at 2:30 A.M., near closing time, and asked for money. After telling him that the day's receipts had already been placed in the safe, defendant insisted that McEnroe give him money. McEn-

roe testified that defendant placed his hand near his waistband and he saw "what I think was something black in his hand," which he believed was a gun. McEnroe then gave defendant $100 from his own pocket, and defendant left. A patron, over McEnroe's objection, called the police, though McEnroe declined to make a statement when the officers responded.

McEnroe testified that at about 9:00 P.M. on November 5, 1997, defendant again entered the bar and asked for a drink. After McEnroe denied the request, defendant lifted his shirt to show what "possibly looked like the handle of a gun" and purportedly said "give me a screwdriver or I'll blast you." McEnroe gave him the drink and defendant then placed $50 on the bar, paying for drinks for himself and other patrons.

The third incident occurred on January 20, 1998 while Brendan Sean Byrne was tending bar at Wilson's. Byrne testified that at about 3:15 P.M. defendant walked in and asked for a drink. Having heard from McEnroe about the prior incidents, Byrne testified that he told defendant he could not drink at the bar. Byrne further testified that defendant also asked for $90 which he said he did not have, at which point defendant put his hand in his pocket and pointed at Byrne. Byrne then gave defendant $45 of his own money. McEnroe showed up minutes after defendant left. Both bartenders were later interviewed by the officers who responded after a patron called the police. No complaint was filed and no mention of armed robbery appeared in the police report.

McEnroe testified that defendant again returned to the bar on January 24, 1998, complaining that the police had been called. He stated that defendant approached him with his hand at his waistband and declared "I'll do you right here in front of everybody," though McEnroe did not see a gun. Defendant was then ushered out of the bar by a group of customers and McEnroe called the police. Shortly thereafter, defendant was apprehended in the neighborhood. No gun was recovered from defendant or found in the area.

Defendant was charged with three counts of robbery in the first degree for the October 29, 1997, November 5, 1997 and January 20, 1998 incidents and one count of menacing in the third degree for the January 24, 1998 incident. During the trial, defendant attempted to call a witness, a third bartender at Wilson's, to impeach McEnroe and Byrne. The witness purportedly would have testified that both complainants had a bad rep-

utation in the community for truth and veracity. The court refused to allow the testimony. Defendant was convicted on all counts, and sentenced to concurrent terms of 10 years imprisonment on each robbery count and one year on the menacing count.

The Appellate Division modified the judgment by vacating defendant's conviction for robbery in the first degree on the second count.* The Court also reduced the sentence for the menacing conviction to three months—the maximum sentence for that crime. Two Justices dissented solely on the ground that the failure to allow defendant to call a witness who would have testified that McEnroe and Byrne had a bad reputation in the community for truthfulness and veracity deprived the defendant of a fair trial as it excluded material and relevant evidence. A Justice of the Appellate Division granted leave to appeal and we now reverse.

## Analysis

It is well settled that a party cannot call a witness to contradict an opposing witness' answers on cross-examination solely for the purpose of impeaching that person's credibility (*see People v Zabrocky*, 26 NY2d 530, 535 [1970]). However, this rule is inapplicable where a party seeks to show that a witness generally has a bad reputation in the community for truth and veracity (*see People v Hinksman*, 192 NY 421, 432 [1908]). Hence, "a party has a right to call a witness to testify that a key opposing witness, who gave substantive evidence and was not called for the purposes of impeachment, has a bad reputation in the community for truth and veracity" (*People v Pavao*, 59 NY2d 282, 290 [1983]).

The trial court must allow such testimony, once a foundation has been laid, so long as it is relevant to contradict the testimony of a key witness and is limited to general reputation for truth and veracity in the community; the weight given to such evidence should be left in the hands of the jury (*see id.*). Applying this rule ensures that the jury is afforded a full picture of the witnesses presented, allowing it to give the proper weight to the testimony of such witnesses.

Materially at issue here was the veracity of the key prosecution witnesses, McEnroe and Byrne. Both bartenders knew de-

---

* The Appellate Division found that the charges based on the November 5, 1997 incident could not be sustained as a matter of law and dismissed the count.

fendant as a difficult customer who often borrows money. The bartenders further admitted to drinking alcohol while working and neither could conclusively state that he saw defendant with a gun, though they both made repeated references to the existence of a gun. The presence of a concealed firearm, or display of what appears to be a firearm is essential to the charge of first degree robbery (*see* Penal Law § 160.15 [2], [4]). The defense theory was that McEnroe and Byrne fabricated the gun, or what appeared to be a gun, in an effort to keep defendant and his aggressive panhandling away from the bar. To support this theory, defendant sought to introduce evidence that both bartenders were known in the community to exaggerate and lie. The proposed witness—described as a coworker who knew both witnesses—supposedly would have testified that McEnroe and Byrne had a bad reputation in the community for truth and veracity. Defendant's request to put forth the reputation witness was denied by the trial court on the grounds that such evidence was too "nebulous" and could result in an endless number of reputation witnesses.

Defendant had a right to present to the jury a witness with personal knowledge of complainants' bad reputation for truthfulness and veracity in the community. The element of the display of what appeared to be a weapon was essential to proving the crime charged, and the credibility of the witnesses who testified about the weapon was critical to the jury's ultimate determination of whether the People had proved each element of the crime beyond a reasonable doubt.

We conclude, moreover, that defendant did establish a proper foundation for this evidence. Defense counsel specifically asserted that he was calling the witness to testify that McEnroe and Byrne "have [a] bad reputation in their community for truth and veracity." He stated further that the witness "knows him" and "worked with them" and "knows who they are." Without examining whether the witness was in fact qualified to offer such testimony, Supreme Court flatly rejected the request.

A witness' reputation among coworkers can be probative and reliable. Indeed, an individual "might be better known in the community of his employment and in the circle of his vocational fellows, where opportunities to evidence the traits at stake may occur with greater frequency than in the environs of his dwelling place, nestled in the anonymity of a large city or suburb" (*People v Bouton*, 50 NY2d 130, 139 [1980]). As the proposed reputation witness worked in a close setting with McEnroe and

Byrne and regularly interacted and communicated with the same group of people, he was well situated to offer such testimony.

Further, the prosecution's case rested largely on Byrne and McEnroe's testimony. The defense theory was that this was nothing more than an aggressive panhandler who had borrowed money in the past. Defendant argued that when the complainants grew tired of his antics they concocted a story that he had a gun in the hope that it would keep him away from the bar. The failure to allow the fellow bartender to testify that Byrne and McEnroe were known in the community to be dishonest was highly prejudicial to defendant as it deprived the jury of a tool to properly assess the credibility of the prosecution's two key witnesses.

Defendant was further prejudiced by the prosecution's summation which consisted not only of improper bolstering but also exploited the trial court's ruling disallowing the reputation evidence. While discussing the credibility of its witnesses, the prosecutor asked the jury "[d]id you hear anything, or did you see anything about those witnesses that would in any way lead you to believe that those were the types of people [liars devoid of character] that Mr. McEnroe was or that Sean Byrne was?" The jury was never provided with the basis for answering that question.

Supreme Court incorrectly analyzed the admission of the proposed testimony as purely discretionary. As we made clear in *Pavao*, a party may introduce reputation testimony as a matter of right if a proper foundation has been established. The court's discretion arises only when a party seeks to rebut that testimony. It is at that point that the judge may determine whether the admission of further testimony or the calling of additional witnesses is proper (*see Pavao*, 59 NY2d at 290). This assures that the court will not be inundated with competing witnesses that will cause undue delay in bringing a trial to conclusion.

Finally, since admission of the reputation evidence would have been relevant and material to the issue of the reliability and credibility of the complainants' testimony, it could reasonably have altered the jury's decision. As there exists a significant probability that the jury—if it found that McEnroe and Byrne's accounts about the display of a weapon were exaggerated—would have acquitted defendant of robbery in the first degree,

the conviction should be reversed (*see People v Crimmins*, 36 NY2d 230, 242 [1975]). Having found reversible error on the reputation evidence question, we need not reach the remaining issues in this case.

Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

Chief Judge KAYE and Judges G.B. SMITH, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur.

Order reversed, etc.