Spain, J.
Appeal from a judgment of the County Court of Ulster County (McDonough, J.), rendered December 20, 2011, upon a verdict convicting defendant of the crimes of sexual abuse in the first degree and endangering the welfare of a child.
In 2008, the victim disclosed to her mother that defendant, a male teenage relative, had sexually abused her on several occasions while visiting her grandparents’ house in Ulster County *1282 between August 2005 and the end of December 2005, when the victim was eight years old and defendant was 17 (age 18 at Christmas 2005). Defendant resided in that house and was raised there by his aunt[1] and uncle, whom he referred to as his parents; the victim referred to them as her grandparents. The abuse was alleged to have occurred during visits on weekends and holidays that coincided with family gatherings, when the victim’s father drove her and her sisters from their residence in Orange County to visit her grandparents and family. Defendant was indicted and, after a jury trial, convicted of sexual abuse in the first and second degrees and endangering the welfare of a child, and acquitted of rape in the first degree and course of sexual conduct against a child in the first and second degrees alleged for the same time period. On appeal, a new trial was ordered[2] based upon an error by the trial court in precluding testimony from the victim’s family members regarding her reputation for truthfulness (74 AD3d 1379 [2010], affd, 17 NY3d 70 [2011]). After a second jury trial, defendant was again convicted of sexual abuse in the first degree and endangering the welfare of a child and sentenced to four months of incarceration and 10 years of postrelease supervision on the top count. Defendant now appeals.[3]
Defendant’s primary contention on appeal is that the jury’s verdict is contrary to the weight of the credible evidence, pointing to perceived inconsistencies and weaknesses in the victim’s account of the abuse, her reputation for untruthfulness, and the claimed inherent unbelievability of her testimony that she was alone with and abused by defendant numerous times in a small house filled with many relatives. In considering defendant’s claim, we view the evidence in a neutral light and, since we find that an acquittal would not have been unreasonable, we must, “like the trier of fact below, ‘weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony’ ” (People v Bleakley, 69 NY2d 490, 495 [1987], quoting People ex rel. MacCracken v Miller, 291 NY 55, 62 [1943]; see People v Romero, 7 NY3d 633 [2006]). Given the lack of physical evidence or eyewitnesses, as is commonly true in sexual assaults, the victim’s testimony about the abuse stood in stark contrast to defend *1283 ant’s testimony denying, in all respects, the victim’s account of sexual contact, which presented a “classic credibility issue” (People v Allen, 13 AD3d 892, 894 [2004], lv denied 4 NY3d 883 [2005] [internal quotation marks and citation omitted]); indeed, “[the victim’s] credibility was the central issue for the jury to resolve” (17 NY3d 70, 78 [2011]).
The victim, age 14 at trial, testified that on at least three occasions between August and December 2005 (she was not able to specify dates), when she was eight years old, she visited her grandparents’ house on weekends and holidays and was alone naked with defendant in his second floor bedroom. Each time, defendant moved a small nightstand to block the door and, after it was over and they were both dressed, defendant would check the hallway and, if clear, push her out of his room; she estimated that the incidents lasted from 5 to 60 minutes. On the first and third occasion, defendant got undressed and removed her clothing, put her on his bed and touched or kissed every intimate part of her body and put his penis in her vagina, mouth and “butt.” She was lured into defendant’s bedroom the first time by the promise of gum and money in exchange for massaging or scratching his back.
On the second occasion, she recalled what she was wearing, that defendant removed her clothing and that she and defendant were naked under the covers, although she could not remember the sexual contact. She further related that her older sister, then age nine, interrupted the encounter when she knocked on the door and pushed the door open, and defendant ran behind the door while the victim remained under the covers up to her neck; her sister asked what they were doing and why the television was off, and defendant said he was changing and that he had turned it off. The sister also testified, corroborating that she and the victim visited and stayed overnight more than four times during the period in issue. She further related that one time she found defendant and the victim alone in his bedroom and, when she opened the door, she observed the victim in defendant’s bed under the covers with only her face exposed, defendant moved behind the door, his chest was naked (she could not see below the waist), and he said he was changing. Her memory was that the television was on and the door was hard to open although she did not observe anything blocking the door, and she did not “think anything” of it at the time. She also confirmed that she would sometimes hang out in defendant’s bedroom and play games or listen to music with him. While there were discrepancies in some of the details, they were fully explored and highlighted for the jury, and it is “not uncommon *1284 for young children to be uncertain and even inconsistent in their trial testimony” (People v Raymo, 19 AD3d 727, 728 [2005], lv denied 5 NY3d 793 [2005]). The sister’s testimony certainly supports, at the very least, the victim’s account of being in defendant’s bed and alone with him, as well as the compelling inference that defendant had the opportunity to and actually committed the sexual abuse as described by the victim (see People v Bleakley, 69 NY2d at 495).
The victim further recounted that she first reported the sexual abuse to her cousins and sister in the summer of 2007, and months later disclosed it to her mother and aunt. She delayed reporting defendant’s conduct because she was scared of him—he had told her not to tell “or else”—and she feared she would not be believed or not be able to see her grandparents. The victim also recounted that defendant had hit her one time when she yelled during the abuse, and other times during visits for which he was not punished. The People presented a forensic psychologist who explained why children of intrafamily sexual abuse continue to associate with their abusers and delay reporting. On cross-examination, the victim conceded that she had not visited defendant’s house in August 2005, she visited at least once in September 2005 and then over the Thanksgiving and Christmas holiday weekends. The defense explored the victim’s account as it emerged, beginning with the initial investigation in 2007 through the first trial in 2009 and at this 2011 trial, regarding the age at which the abuse began and the total number of incidents; the defense probed the victim regarding the frequency of—and her ability to specifically recall—her visits to her grandparents’ house in the period in issue in 2005, pointing out weaknesses and inconsistencies. On our review of her account, “we cannot say that [her] trial testimony was utterly incredible or inherently unbelievable” (People v Beauharnois, 64 AD3d 996, 999 [2009], lv denied 13 NY3d 834 [2009]). Indeed, the inconsistencies went to issues of credibility and did not relate to the material elements of the crimes charged (see id. at 998-999). Moreover, while the victim candidly conceded telling a police investigator in 2007 (when she was 10) that she had “told lies before,” this generalized admission was not particularly incriminating given her young age and the lack of any evidence that she had lied to falsely accuse or harm others or ever on important matters.
Defendant testified, denying that any sexual contact of any nature had occurred; he presented testimony of family and friends in part accounting for his activities during the victim’s visits, the timing of those visits and the number of relatives *1285 present. Defendant, as well as his father and aunt (who also lived there), testified that defendant was away in August 2005 and the victim did not visit in September or October 2005; she visited only at Thanksgiving, when defendant was with a group of friends for dinner with extended family at his house and then left with friends returning around 1:00 a.m., and went to friends’ houses the next day; the victim and her family came for the afternoon only on Christmas Day to exchange gifts; and there were always a lot of relatives in the house on holidays. Defendant testified that he rarely allowed his younger relatives into his bedroom, which was located across the hall from the bathroom used by everyone and next to bedrooms of other family members. The aunt and father further testified that the victim had a reputation for dishonesty in the extended family and there was evidence that she had some difficulty getting along with her cousins and was often excluded.
The jury, having heard the contradictory testimony regarding, among other things, the frequency, timing and circumstances of the victim’s visits to her grandparents’ house, as well as her steadfast account that defendant had sexually abused her and defendant’s equally resolute denials, obviously credited her account. This was the second jury to conclude beyond a reasonable doubt that defendant had, in fact, subjected her to sexual contact for the purpose of gratifying sexual desire (see Penal Law §§ 130.00 [3]; 130.65 [3]) and acted in a manner injurious to her welfare (see Penal Law § 260.10 [1]). This conclusion was not contradicted by any compelling evidence (see People v Allen, 13 AD3d at 894), and we cannot conclude that the shortcomings in her testimony rendered it “so unworthy of belief as to be incredible as a matter of law” (People v Wright, 214 AD2d 759, 762 [1995], lv denied 86 NY2d 805 [1995] [internal quotation marks and citation omitted]). Having heard the testimony regarding the victim’s reputation for truth and veracity (see 17 NY3d at 76; People v Pavao, 59 NY2d 282, 290 [1983]), it was “for the jury to evaluate the credibility of the character witnesses who testif[ied], and to decide how much weighty if any,] to give the views reported in their testimony” (17 NY3d at 76). The jury apparently was not persuaded by that testimony of witnesses with an arguable bias in defendant’s favor (id. at 78). Mindful of the deference we accord to the jury’s “opportunity to view the witnesses, hear the testimony and observe demeanor” (People v Bleakley, 69 NY2d at 495; People v Mitchell, 57 AD3d 1308, 1309-1310 [2008]), “we cannot conclude that the jury erred in crediting the victim’s testimony over that of defendant or failed to give the evidence the weight it should be accorded” (People v Allen, 13 AD3d at 894; see People v Beauharnois, 64 *1286 AD3d at 999). Thus, the jury’s verdict was supported by the weight of credible evidence and will not be disturbed (see People v Danielson, 9 NY3d 342, 348 [2007]; People v Romero, 7 NY3d at 643; People v Bleakley, 69 NY2d at 495).
Finally, defendant argues that the denial of youthful offender status was an abuse of discretion given that he had no prior or subsequent criminal history and had lived a law-abiding life for four years since his 2007 arrest, was a college student with an exemplary academic, athletic and employment record, and has good moral character and reputation as attested to by numerous letters from family, friends and employers. “[T]he determination to grant youthful offender treatment rests within the discretion of the sentencing court and will not be disturbed absent a clear abuse of discretion” (People v Driggs, 24 AD3d 888, 889 [2005]; see CPL 720.20 [1] [a]). Although defendant was an eligible youth (see CPL 720.10 [1], [2]), County Court considered all of the relevant factors, including the foregoing offered in mitigation and, as did the trial court at the first trial, concluded that granting youthful offender treatment would not be appropriate. The court relied upon the nature of the crimes perpetrated against his eight-year-old relative and his failure to accept responsibility for his conduct or to express genuine concern for its impact on the victim’s well-being (see People v Driggs, 24 AD3d at 889; cf. People v Jeffrey VV., 88 AD3d 1159, 1160 [2011]). We discern no abuse of discretion[4] (see People v Boyce, 2 AD3d 984, 987 [2003], lv denied 2 NY3d 796 [2004]). While defendant maintains his innocence, two juries have found him guilty of sexually abusing the victim and two trial courts have determined youthful offender treatment to be inappropriate. Given the manipulative and repeated nature of his abusive conduct, we decline defendant’s request to exercise our discretion to grant him youthful offender status (see CPL 470.15 [3] [c]; People v Jeffrey VV., 88 AD3d at 1160).
Peters, PJ., Stein and Garry, JJ., concur. Ordered that the judgment is affirmed, and matter remitted to the County Court of Ulster County for further proceedings pursuant to CPL 460.50 (5).

. Defendant was adopted by his aunt after his mother’s death, when he was an infant.

. In that decision, the sexual abuse in the second degree conviction was dismissed as a lesser included offense of sexual abuse in the first degree.

. This Court granted an order staying execution of the judgment pending appeal.

. After the first trial, the Probation Department apparently recommended youthful offender treatment. Here, the presentence investigation report recommended probation without incarceration, but made no recommendation as to youthful offender treatment.