People v Youngs (2019 NY Slip Op 06540)





People v Youngs


2019 NY Slip Op 06540


Decided on September 12, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: September 12, 2019

108096

[*1]The People of the State of New York, Respondent,
v
Joseph S. Youngs, Appellant.

Calendar Date: January 15, 2019

Before: Egan Jr., J.P., Lynch, Devine, Rumsey and Pritzker, JJ.


John A. Cirando, Syracuse, for appellant.
William G. Gabor, District Attorney, Wampsville (J. Scott Porter of counsel), for respondent.



Rumsey, J.
Appeal from a judgment of the County Court of Madison County (McDermott, J.), rendered June 4, 2015, upon a verdict convicting defendant of the crimes of predatory sexual assault against a child, criminal sexual act in the first degree, sexual abuse in the first degree and endangering the welfare of a child (two counts).
In January 2014, defendant was charged with predatory sexual assault against a child, criminal sexual act in the first degree, sexual abuse in the first degree, promoting a sexual performance by a child, possessing a sexual performance by a child and two counts of endangering the welfare of a child based on two incidents that allegedly occurred in May 2013. During the first incident, defendant is alleged to have asked the victim — a cousin who was then 12 years old — to take pictures of her vagina with his cell phone. During the second incident, defendant is alleged to have put his mouth on the victim's vagina, touched her breast and had sexual intercourse with her. Defendant made a pretrial motion to suppress the oral and written statements he had made to law enforcement officers. County Court conducted a Huntley hearing, but did not issue a decision on the motion or "set forth on the record its findings of fact, its conclusions of law and the reasons for its determination" (CPL 710.60 [6]).
On the first day of trial, defendant directed County Court's attention to the absence of a ruling on the suppression motion, to which the court erroneously replied by stating that it had ruled the statement admissible at the Huntley hearing. The People withdrew the charges of promoting a sexual performance by a child and possessing a sexual performance by a child. After a jury trial, defendant was convicted of the remaining charges. He was sentenced, as a second felony offender, to consecutive terms of incarceration on four convictions — 25 years to life for predatory sexual assault against a child, 12 years for criminal sexual act in the first degree, with five years of postrelease supervision, three years for sexual abuse in the first degree, with 15 years of postrelease supervision, and one year for one count of endangering the welfare of a child. He was also sentenced to a concurrent term of one year for the other count of endangering the welfare of a child. Defendant appealed, and this Court withheld decision and, as relevant here, remitted the matter for a ruling on defendant's suppression motion (169 AD3d 1155 [2019]). Upon remittal, County Court reviewed the record and issued a written decision setting forth the reasons it had determined that defendant's statements were admissible.
Initially, we find that County Court properly determined that defendant's oral and written statements were voluntarily made and, therefore, were admissible. The People bear the burden of proving, beyond a reasonable doubt, that a defendant's statements are voluntary (see People v Moore, 162 AD3d 1123, 1125 [2018]). Where Miranda warnings are timely administered, "the voluntariness of a statement is determined by examining the totality of the circumstances under which it was obtained . . . [and] the requisite inference of voluntariness may be relatively easily drawn. Factual determinations of the suppression court are entitled to great weight and will not be overturned unless clearly contrary to the evidence" (id. at 1126 [internal quotation marks and citations omitted]; see People v Weaver, 167 AD3d 1238, 1240-1242 [2018], lv denied 33 NY3d 955 [2019]).
Defendant provided statements to police officers on two dates. On May 26, 2013, defendant voluntarily reported to the Oneida City Police Department and agreed to be interviewed. A Miranda warning was given before questioning began, and defendant executed a written statement at the end of the interview, which lasted less than 70 minutes. On June 25, 2013, defendant again voluntarily appeared at the Oneida City Police Department and submitted to a polygraph examination conducted by a State Police investigator. A Miranda warning was given at the beginning of the second interview, which lasted approximately five hours. During the second interview, defendant was offered food and beverages and, during two breaks, he was permitted to leave the building to smoke cigarettes. There was no indication in either interview that defendant's statements were involuntary. Only one officer was present during each interview. Defendant was not restrained and he exhibited no signs of intoxication or other impairment. Further, defendant did not ask for counsel or that the officer end the interview, and at no point did he refuse to answer questions.
Defendant next contends that his convictions are not supported by legally sufficient evidence and are against the weight of the evidence. As defendant concedes, his legal sufficiency claim is unpreserved because his general motion for a trial order of dismissal did not include arguments directed at specific deficiencies in the proof (see People v Chaneyfield, 157 AD3d 996, 996 [2018], lv denied 31 NY3d 1012 [2018]). "Nevertheless, as defendant also claims that the verdict was against the weight of the evidence, this Court must determine whether each element of the charged crimes was proved beyond a reasonable doubt" (id. [citations omitted]). "When undertaking a weight of the evidence review, we must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and then[, if not,] weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence. When conducting this review, we consider the evidence in a neutral light and defer to the jury's credibility assessments" (People v Gill, 168 AD3d 1140, 1140-1141 [2019] [internal quotation marks and citations omitted]).
As relevant here, a person who is 18 years old or older commits predatory sexual assault against a child by engaging in sexual intercourse with another person who is less than 13 years old (see Penal Law §§ 130.35 [4]; 130.96). A person who is 18 years old or older is guilty of criminal sexual act in the first degree when he or she engages in oral sexual conduct with another person who is less than 13 years old (see Penal Law § 130.50 [4]). A person is guilty of sexual abuse in the first degree "when he or she subjects another person to sexual contact . . . [w]hen the other person is less than [13] years old and the actor is [21] years old or older" (Penal Law § 130.65 [4]). Finally, a person is guilty of endangering the welfare of a child when he or she "knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than [17] years old" (Penal Law § 260.10 [1]).
It is undisputed that, in May 2013, defendant was 27 years old and the victim was 12 years old. The victim identified defendant at trial and stated that she knew him as her cousin. She testified that, on May 25, 2013, she went to a family party at her uncle's house and, during the party, defendant asked her to take pictures of her vagina with his cell phone. She stated that she went into the bathroom and complied with defendant's request because he was older, she was afraid of him and because she "had no one else to go to" as all other adults present at the party were drinking.
The victim further testified that her grandmother made plans for her to visit her female cousin, Tasha Meade, on May 26, 2013. Her uncle transported her to the home of her aunt, Mary Ann Houck, located in the City of Oneida, Madison County. The victim said that, when her uncle arrived, defendant was also in the car and that, despite what had happened with defendant the day before, she got in the car because she "was supposed to." According to the victim, when they arrived at Houck's house, she and defendant knocked on the door, but no one answered. She said that defendant stated that he had spoken to Meade and that she had indicated she would return soon. The victim stated that her uncle then left her alone with defendant outside the Houck residence. Defendant and the victim entered the home through the back door and, once inside, defendant instructed the victim to lay down. The victim testified that defendant removed her pants and her underwear, put his mouth on her vagina, touched her breast underneath her bra and then engaged in sexual intercourse with her until he ejaculated. The victim stated that she went into the bathroom for about five minutes, and that she and defendant then walked to a nearby church, passing a police station and a Byrne Dairy convenience store. On cross-examination, defendant's counsel explored the victim's credibility by questioning her about Facebook posts that she had made around the time of the alleged assault on May 26, 2013 and her failure to initially report that defendant had placed his mouth on her vagina.
Oneida City Police Investigator Will Clark testified that he was assigned to investigate an alleged rape that was reported to have occurred at Houck's house. Clark stated that, on June 10, 2013, defendant voluntarily complied with the request that he report to the police station for an interview. Clark further testified that, during this initial interview, defendant admitted to being sexually attracted to "younger females under age," and he made a written statement regarding the events of May 26, 2013 that was introduced into evidence. In the statement, defendant recounted that he and the victim went to Houck's house around 11:00 a.m. on May 26, 2013 and left about 10 minutes later, but he denied entering the home or having any sexual contact with the victim.
Clark further testified that, following a subsequent interview on June 25, 2013, defendant made a second written statement that was also introduced into evidence. In the second statement, defendant admitted to having sexual contact with the victim in the bushes outside of Houck's house, where defendant claimed that the victim grabbed him and "undid [his] zipper, reached her fingers in there" and began rubbing his penis. According to the statement, defendant stated that he then touched the victim's leg and vagina and, at her request, placed his hands into her pants. Defendant further admitted to inserting his fingers into the victim's vagina, exposing his penis to her and ejaculating on her stomach, but he denied having sexual intercourse or oral sex with the victim. In the statement, defendant further claimed that he went to the nearby Byrne Dairy store to purchase toilet paper so that the victim could clean herself up. Clark testified that defendant did not appear in video footage that he reviewed depicting the Byrne Dairy store from 11:00 a.m. until 1:00 p.m. on May 26, 2013. Clark further testified that, during the interview, defendant told him about an incident on May 25, 2013 with the victim that was not included in defendant's written statements. Clark said that defendant told him that, while at a family party, the victim borrowed his phone to call her mother and that, when the victim returned the phone, she told him to look through his pictures, where he found two pictures of her vagina. Clark testified that he was unable to retrieve the pictures from defendant's phone.
The victim was examined by Ellen Larson, a family medicine physician, in June 2013 — after the victim reported that she had been sexually assaulted. Larson testified that, although the victim's external genital area showed no evidence of bruising or injury, she observed some "redness" and noted that the area was "mildly tender to palpation." The victim was examined again in August 2013 by Ann Botash, a pediatric physician, who testified that there were several irregularities in the victim's hymen that were consistent with sexual assault or "[a]ny trauma to that area."
Houck testified for defendant. She stated that it is her practice to keep all of the doors and windows to her home locked and that defendant did not have a key to her home. She further testified that, on the morning of May 26, 2013, during the time of the alleged assault, she and her family were at church and she clearly remembered locking the rear door of her home as she left. She noted that when she returned home, she noticed no signs of forced entry or anything being out of order in her home. She further testified that the victim continued to behave normally and seemed "happy" after the alleged incident.
In light of defendant's admission to sexual contact with the victim, a different verdict would have been unreasonable on the charges of sexual abuse in the first degree and one count of endangering the welfare of a child for the May 26, 2013 incident (count 4 of the indictment), and we reject outright defendant's claim that such convictions were against the weight of the evidence (see People v Henry, 173 AD3d 1470, 1478 [2019]). However, in light of defendant's statements and Houck's testimony, a different verdict would not have been unreasonable on the remaining charges. Nonetheless, according deference to the jury's credibility assessments, we conclude that defendant's convictions of predatory sexual assault against a child, criminal sexual act in the first degree and endangering the welfare of a child based on the events of May 25, 2013 (count 7 of the indictment) are supported by the weight of the evidence (see People v Thornton, 141 AD3d 936, 938 [2016], lv denied 28 NY3d 1151 [2017]; People v Fournier, 137 AD3d 1318, 1319-1320 [2016], lv denied 28 NY3d 929 [2016]). 
Defendant next argues that County Court deprived him of his right to present a defense, specifically, in part, by precluding evidence of the victim's reputation for being untruthful. The Court of Appeals has "long held that a party has a right to call a witness to testify that a key opposing witness, who gave substantive evidence and was not called for purposes of impeachment, has a bad reputation in the community for truth and veracity" (People v Fernandez, 17 NY3d 70, 76 [2011] [internal quotation marks and citation omitted]). "Once the party seeking admission of reputation evidence has laid the proper foundation, it is for the jury to evaluate the credibility of the character witnesses who testify, and to decide how much weight to give the views reported in their testimony. While a reasonable assurance of reliability is necessary for a proper foundation, such reasonable assurance exists where the testifying witnesses report the views of a sufficient number of people, and those views are based on sufficient experience with the person whose character is in question. Reputation evidence may be reliable . . ., but still questionable from a credibility standpoint. This possibility, however, is not a proper basis for exclusion of reputation evidence. Reliability — whether a character witness has established a proper basis for knowing a key opposing witness' general reputation for truth and veracity — is a question of law for the court. By contrast, the credibility of such character witness — whether that witness is worthy or unworthy of belief or is motivated by bias — is a factual question for the jury. We caution that a trial court should not use reliability as a ground for excluding evidence it believes is not credible" (id. at 76-77 [internal quotation marks and citation omitted]).
In his motion in limine, defendant proffered a proposed witness who was prepared to testify that she had known the victim since birth, that they were members of the same large extended family and that many members of the extended family knew the victim. Further, the proposed witness was prepared to testify that she was aware of the victim's bad reputation for truthfulness among the extended family. The motion was denied. In response to questioning from County Court at the beginning of defendant's case at trial, defense counsel again set forth the anticipated testimony of the proposed witness. County Court ruled that the proposed foundation was insufficient and stated that, if that was the only foundation defendant was going to offer, he could anticipate an objection from the People, which the court was "going to have to grant." The record demonstrates that defendant made known to the court his position that the court's ruling was in error (see CPL 470.05 [2]); moreover, the court's ruling signaled the futility of producing the proposed witness.
County Court erred when it determined that the proposed testimony failed to establish a proper foundation for admission of testimony regarding the victim's bad reputation for truthfulness; in fact, the offer of proof contained each element required by People v Fernandez (17 NY3d at 76-77). County Court's erroneous decision deprived the jury from undertaking a meaningful assessment of the victim's credibility (see id. at 78). Because the victim's direct testimony was the only evidence of rape and oral sexual contact, or that defendant requested that the victim take pictures of her vagina on May 25, 2013, her credibility was the central issue for the jury to resolve on three counts and, thus, County Court's failure to admit evidence relevant to her bad reputation with respect to truth cannot be considered harmless (see id.). Accordingly, we are constrained to reverse defendant's convictions of predatory sexual assault against a child, criminal sexual act in the first degree and one count of endangering the welfare of a child for the events of May 25, 2013 and remit for a new trial on those counts.[FN1]
We address defendant's contention that County Court erred by precluding evidence of the victim's sexual conduct because this issue may arise upon retrial. " Under the Rape Shield Law [(see CPL 60.42)], evidence of a victim's sexual conduct in a case prosecuted under Penal Law article 130 is inadmissible unless one of the exceptions applies" (People v Vandebogart, 158 AD3d 976, 978 [2018] [citations omitted], lv denied 31 NY3d 1089 [2018]). Defendant sought to admit testimony that the victim had "los[t] her virginity" shortly before the alleged incident to rebut the claim that defendant was the source of her physical injuries. Defendant's offer of proof failed to establish that any of the exceptions applied. Although defendant claimed that the victim had lost her virginity, the only proof he offered in support of this claim was the inconclusive testimony of Meade, who reported that she had had a conversation with the victim in April or early May 2013 during which the victim talked about "losing her virginity with one of her boyfriends." However, Meade further testified that the victim had stated that she was unsure whether she had lost her virginity because she was unsure whether "oral sex was part of sex." On this record, County Court properly denied the motion because the proof failed to establish that the victim had engaged in sexual intercourse that could have caused the relevant injuries.
Egan Jr., J.P., Lynch, Devine and Pritzker, JJ., concur.
ORDERED that the judgment is modified, on the law, by reversing defendant's convictions of predatory sexual assault against a child, criminal sexual act in the first degree and endangering the welfare of a child under counts 1, 2 and 7 of the indictment and vacating the sentences imposed thereon; matter remitted to the County Court of Madison County for a new trial on said counts; and, as so modified, affirmed.



Footnotes

Footnote 1: The victim's testimony was not required to convict defendant of sexual abuse in the first degree and one count of endangering the welfare of a child (count 4 of the indictment), because the ages of defendant and the victim are undisputed and his written statements contain sufficient admissions to establish the necessary elements of these crimes. Accordingly, the error in precluding evidence of the victim's reputation for truthfulness does not require that these convictions be vacated.